UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BENJAMIN HUMPHREY, | |
| Plaintiff, | |
| v. | Civil Action No. |
| HOSPITALITY SERVICES OF BANGOR LP d/b/a BANGOR RAMADA d/b/a BANGOR RAMADA OF BANGOR, | |
| Defendant. | |

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES Plaintiff, Benjamin Humphrey ("Plaintiff" or "Mr. Humphrey"), by and through undersigned counsel, and complains against Defendant, Hospitality Services of Bangor LP. d/b/a/ Bangor Ramada d/b/a/ Ramada Inn of Bangor ("Defendant" or "Bangor Ramada"), as follows:

JURISDICTION AND PARTIES

1.      This action arises under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, *et seq*., Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*., and the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*

2.      Mr. Humphrey is a United States citizen residing in the State of Maine, County of Penobscot, Town of Bangor.

3.      Defendant is a Maine corporation doing business as a medium-sized hotel in the State of Maine, County of Penobscot, Town of Bangor.

4.      Plaintiff is an "employee" as that term is defined under Title VII, and the MHRA.

5.      At all relevant times, Defendant employed fifteen or more employees.

6.     This Court has subject matter jurisdiction over Mr. Humphrey's claims pursuant to 28 U.S.C. §§ 1331, and 1367.

7.     This Court has personal jurisdiction over the defendant corporation because the corporation's principal place of business is located in this state.

8.     On or about April 16, 2020, Plaintiff filed a timely Complaint/Charge of Discrimination against Defendant with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant subjected him to unlawful discrimination on the bases of race and color, retaliation, and whistleblower retaliation.

9.     On April 9th 2021, the MHRC issued a Notice of Right to Sue with respect to Plaintiff's claims under the MHRA.

10.    On April 9th 2021, the EEOC issued a Notice of Right to Sue with respect to Plaintiff's claims under Title VII.

11.    Plaintiff has exhausted his administrative remedies with respect to all claims set forth in this Complaint that require administrative exhaustion.

## JURY TRIAL REQUESTED

12.    Plaintiff requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

13.    Defendant's conduct violated the prohibition against race, ancestry and national origin discrimination under the MHRA, and race and national origin discrimination under Title VII and Section 1981.

14.    Mr. Humphrey is a member of the Oglala Tribe and the Lakota Sioux Nation.

15.    Mr. Humphrey's race, national origin and ancestry is Native American.

16.     On May 25, 2019, Mr. Humphrey was hired to work for Bangor Ramada as a Night Auditor.

17.     Mr. Humphrey's primary responsibilities in the Night Auditor role included covering the front desk during late night and early morning hours.

18.     In addition to covering the front desk, Mr. Humphrey's job duties included but were not limited to: auditing credit card receipts, auditing cash deposits, cash and other logs, as well as restaurant and hotel financial records.

19.     Mr. Humphrey's standard schedule was to work three nights per week as night auditor and to fill in shifts at the front desk as needed by Defendant.

20.     Mr. Humphrey worked between 24 and 48 hours each week depending on how many shifts he picked up beyond the standard three nights per week.

21.     When hired, Defendant did not conduct a criminal background check and did not inquire about Mr. Humphrey's Criminal record.

22.     At all times material to this Complaint, Free R. Martin was the General Manager at Bangor Ramada.

23.     At all times material to this Complaint, Jessica Avery was the Assistant General Manager at Bangor Ramada.

24.     Mr. Humphrey was trained as a Night Auditor by Lynn Torres and Brittany Steele.

25.     At all relevant times Mr. Humphrey performed his job duties well.

26.     Prior to termination, Mr. Humphrey received no progressive discipline from Bangor Ramada.

27.     Mr. Humphrey was often called upon by Bangor Ramada to pick up extra shifts and cover employee absences when Bangor Ramada needed help.

28.     Mr. Humphrey has strong Native American features.

29.     Defendant's managers and employees knew that Mr. Humphrey was Native American because of his appearance.

30.     Defendant's managers also knew that Mr. Humphrey was Native American because he submitted a census document from his tribe to identify himself when he was hired.

31.     On September 23, 2019, a new front desk employee, Tina Heber made a racist comment and gesture toward Mr. Humphrey as she was leaving work. She put her fingers behind her head, like feathers, and said, "Bye Chief."

32.     Ms. Heber was not joking or being friendly.

33.     Ms. Heber was upset with Mr. Humphrey because he caught an error that she had made when he audited her invoices and receipts in the course of his job duties.

34.     The following day, September 24, Mr. Humphrey reported Ms. Heber's racial harassment to the Assistant General Manager, Ms. Avery.

35.     Ms. Avery said something like, "I'm sure she didn't mean anything by it. I will talk to her."

36.     Ms. Avery did not get back to Mr. Humphrey about what was said or done to investigate his racial harassment complaint or to let him know if corrective action had been taken.

37.     On October 25, 2019, one of Mr. Humphrey's co-workers, Sarah Payson-Neale, told him that Ms. Heber was telling other employees, "I can't believe Ben blew the 'chief' word all out of proportion, we need to get him out of here."

38.     Ms. Heber was apparently drumming up support from co-workers to take her side against Mr. Humphrey.

39.     Mr. Humphrey reported to Ms. Avery that Ms. Heber was retaliating against him for complaining about racial harassment, he told Ms. Avery something like, "This has got to stop. This should be done and over with."

40.     Ms. Avery asked Mr. Humphrey to put his complaint in writing, and he did.

41.     Mr. Humphrey waited to see what action Ramada was going to take in response to his complaint about racial harassment and retaliation.

42.     Mr. Humphrey, again, received no response from Ms. Avery.

43.     After receiving no response from Ms. Avery, Mr. Humphrey called the General Manager, Mr. Martin and asked why no action had been taken in response to his complaint of racial harassment and retaliation by Ms. Heber.

44.     Mr. Martin indicated that he didn't know anything about Mr. Humphrey's report of racial harassment or retaliation.

45.     Mr. Martin asked Mr. Humphrey to give him a couple of days to find out what was going on.

46.     After this conversation, Mr. Humphrey received no response from Mr. Martin regarding his report of racial harassment and retaliation.

47.     Subsequent to Mr. Humphrey's report of racial harassment and retaliation, Mr. Martin launched a retaliatory investigation.

48.     Defendant has indicated that after Mr. Martin and Mr. Humphrey's October conversation regarding the racial harassment and retaliation experienced by Mr. Humphrey, Mr.

Martin began to check video footage of the front desk and lobby "to see if Mr. Humphrey was performing his night auditor duties appropriately."

49.    Mr. Martin would not have scrutinized video of Mr. Humphrey if Mr. Humphrey had not reported the racial harassment and retaliation to Mr. Martin.

50.    From June 07, 2019 to October 4, 2019 - prior to Mr. Humphrey's complaints of harassment and retaliation - he had been working as many as 48 hours per week. During this time Mr. Humphrey worked an average of 36.6 hours per week.

51.    After Mr. Humphrey complained about retaliation, his hours were cut back.

52.    From October 11 through the date he was fired, Mr. Humphrey worked as few as 25 hours per week and never worked more than 35 hours per week. During this time Mr. Humphrey worked an average of 29.8 hours per week.

53.    Ms. Avery is the one who makes the schedule.

54.    Ms. Avery blamed Mr. Humphrey's reduction in hours on seasonal slowdown.

55.    Other employees did not experience a reduction in hours, including Ms. Heber, who had not worked for Ramada for as long as Mr. Humphrey had.

56.    On November 14, 2019, Mr. Humphrey was out to dinner with his niece when he received a phone call from the General Manager, Mr. Martin.

57.    Mr. Martin said something to the effect of, "Hey, you are supposed to come in on Saturday night. You know what, you don't need to come in. We don't need you."

58.    Mr. Humphrey replied, "You're firing me?"

59.    Mr. Martin said, "Yea, yea. I caught you on the camera several times, sleeping on the job. That's not acceptable. I'm letting you go."

60.     Mr. Humphrey was terminated by Mr. Martin three weeks after reporting racial harassment and retaliation to Mr. Martin.

61.     In a letter dated November 14, 2019, Mr. Martin and Ms. Avery wrote that Mr. Humphrey was fired, effective immediately, and that the "primary reason" was sleeping on the job.

62.     Defendant claims that the surveillance cameras that survey the lobby show Mr. Humphrey spending many hours of several shifts sleeping on the sofa and that at times, guests had to wake him in order to get service.

63.     These allegations are false. Mr. Humphrey did not sleep on the job.

64.     At times, during the night shift, when Mr. Humphrey's auditing duties were complete and there were no customers in the lobby, Mr. Humphrey would lay down on the sofa in the lobby and watch TV.

65.     Mr. Humphrey was always alert and took care of any customer who needed assistance. No customer ever had to wake him up.

66.     Defendant did not have a policy against sleeping or lying down on the sofa.

67.     Mr. Humphrey was not told that sleeping or lying down on the sofa was not allowed.

68.     Mr. Humphrey's trainers told him that when it was slow, they would go into the Captain's room and lay down.

69.     Mr. Humphrey was not given any warnings about lying down or sleeping on the job prior to termination and he had not received any progressive discipline.

70.     Defendant does not allege that any complaints were received from guests who allegedly had to wake Mr. Humphrey to get service.

71.     Defendant did not explain why Mr. Humphrey was not given any warning the first time that he was allegedly seen, on camera, sleeping on the job.

72.     In response to Plaintiff's MHRC charge, Defendant added two more reasons for termination.

73.     Defendant added that Mr. Humphrey was also fired because he was observed on video picking at his toes and wiping them on the back of the sofa, in violation of Ramada standards.

74.     The allegation is false.

75.     Defendant also added that Mr. Humphrey was fired because he was seen on video behind the desk with a nonemployee, possibly his niece, which is allegedly against policy.

76.     The allegation is true but was not a reason for Mr. Humphrey's termination.

77.     Mr. Humphrey had seen other employees' children behind the desk and had no reason to think that it was a problem or against policy.

78.     Ms. Avery was present when Mr. Humphrey allowed his 15-year-old niece to do her homework behind the desk.

79.     Ms. Avery later sent Mr. Humphrey a text stating that non-employees were not allowed behind the desk.

80.     Mr. Humphrey complied and did not permit any non-employees behind the desk after he was told there was a policy against it, even though he was being denied a privilege of employment that was enjoyed by other employees.

81.     Defendant indicates that the decision to terminate Mr. Humphrey was made based on Mr. Martin's investigation and review of surveillance footage.

82.     Defendant indicates that Mr. Martin's investigation produced surveillance footage of Mr. Humphrey sleeping on the job and wiping his toes on the couch, but states that the footage no longer exists as it was only retained for 90 days. Video footage should have been retained.

83.     Plaintiff's Counsel contacted Defendant on behalf of Mr. Humphrey in January 2020 (approximately two months after Mr. Humphrey's termination) asking for a copy of his personnel file and records of Defendant's investigation prior to termination.

84.     On April 7, 2020 Plaintiff's counsel sent an additional preservation letter to Respondent advising them to specifically retain relevant evidence including all video surveillance of the lobby from January 1, 2019 to the present.

85.     Defendant failed to preserve the surveillance footage because it does not corroborate the Defendant's stated reason for termination and would prove that the reasons given for termination are pretexts.

86.     Defendant did not have a policy against racial harassment and retaliation.

87.     Defendant claims that at the time of hire, employees are educated by the department head that the Ramada Inn is a harassment free workplace and that discrimination is not tolerated.

88.     Mr. Humphrey received no such education about any such policy.

89.     Race, color, national origin and ancestry were motivating factors in Mr. Humphrey's termination.

90.     Mr. Humphrey engaged in activity protected by Section 1981, Title VII, and the MHRA when he opposed and reported racism in the workplace and when he opposed and reported retaliation for his initial report.

91.     Mr. Humphrey had a good faith, reasonably belief that the racial harassment at work and subsequent retaliation were violations of his rights.

92.     Mr. Humphrey's protected activities including his verbal and written reports to Ms. Avery and his verbal report to Mr. Martin.

93.     Defendant terminated Plaintiff because of his race, color national origin, ancestry, and protected reports.

94.     Defendant violated Mr. Humphrey's rights under Section 1981, Title VII, and the MHRA by cutting his hours and firing him because of his race, national origin and ancestry.

95.     Defendant violated Mr. Humphrey's rights under Section 1981, Title VII, the MHRA and the WPA by cutting his hours, launching a retaliatory investigation and firing him for reporting racial harassment and related retaliation in violation of MHRA.

96.     Defendant knowingly and recklessly violated Mr. Humphrey's state and federally protected rights.

97.     As a result of Defendant's violations of his rights, Mr. Humphrey has suffered humiliation, anxiety, harm to his career, and substantial suffering relating to his loss of income.

98.     Section 1981 has no cap on compensatory damages.

<u>COUNT I: Section 1981 – Discrimination</u>

99.     Paragraphs 1-98 are incorporated by reference.

100.    Defendant violated Section 1981 by discriminating against Plaintiff in the terms and conditions of employment and discharging him from employment because of his race, color, and ancestry.

<u>COUNT II: Section 1981 - Retaliation</u>

101.    Paragraphs 1-100 are incorporated by reference.

102.     Defendant retaliated against Plaintiff for asserting rights protected by Section 1981.

COUNT III: Title VI - Discrimination

103.     Paragraphs 1-102 are incorporated by reference.

104.     Defendant violated Title VII by discriminating against Plaintiff in the terms and conditions of employment and discharging him from employment because of his race and national origin and because these things were motivating factors in the decisions to treatment him differently and worse and terminate his employment.

COUNT IV: Title VII - Retaliation

105.     Paragraphs 1-104 are incorporated by reference.

106.     Defendant retaliated against Plaintiff for asserting rights protected by Title VII.

COUNT V: MHRA - Discrimination

107.     Paragraphs 1-106 are incorporated by reference.

108.     Defendant violated the MHRA by discriminating against Plaintiff in the terms and conditions of employment and discharging him from employment because of his race, national origin and ancestry.

COUNT VI: MHRA - Retaliation

109.     Paragraphs 1-108 are incorporated by reference.

110.     Defendant retaliated against Plaintiff for asserting his rights under the MHRA.

PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

(a)     Declare the conduct engaged in by Defendant to be in violation of his rights;

(b)     Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate Plaintiff's rights;

(c)     Order Defendant to employ Plaintiff in his former position;

(d)     Award equitable-relief for back pay, benefits and prejudgment interest;

(e)     Award compensatory damages in an amount to be determined at trial;

(f)     Award punitive damages in an amount to be determined at trial;

(g)     Award civil penal damages in an amount to be determined at trial;

(h)     Award liquidated damages in an amount to be determined at trial;

(i)     Award nominal damages;

(j)     Award attorney's fees, including legal expenses, and costs;

(k)     Award prejudgment interest;

(l)     Permanently enjoin Defendant from engaging in any employment practices that discriminate on the basis of race and color;

(m)     Permanently enjoin Defendant from engaging in any employment practices that retaliate against employees who assert their right to be free from race and color discrimination or who report unsafe and/or illegal conditions;

(n)     Require Defendant to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate retaliation in the future;

(o)     Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

(p)     Require that Defendant train all management level employees on the protections afforded by Section 1981, Title VII, and the MHRA;

(q)     Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant unlawfully terminated him because of race discrimination and retaliation; and

(r)     Grant to Plaintiff such other and further relief as may be just and proper.

Dated:  April 13, 2020                          /s/ Chad T. Hansen
                                                Chad T. Hansen
                                                Attorney for the Plaintiff

                                                MAINE EMPLOYEE RIGHTS GROUP
                                                92 Exchange Street 2nd floor
                                                Portland, Maine 04101
                                                Tel. (207) 874-0905
                                                Fax (207) 874-0343
                                                Chad@EmployeeRightsLaw.Attorney